

This is an unofficial transcript derived from video/audio recordings

Supreme Court of Texas.

Magdalena Adrienna Abutahoun, Individually and as Personal Representative of the Heirs and Estate of Robert Wayne Henderson, Deceased, and Tanya Elaine Henderson, Individually in Her Own Right and as Next Friend of Za'quoia Zanice Henderson, a Minor,

v.

The Dow Chemical Company

No. 13-0175

January 14, 2015

Oral Argument

Appearances:

Denyse Finn Clancy, Baron & Budd, P.C., Dallas, Texas, for Petitioners.

Macey Reasoner Stokes, Baker Botts, L.L.P., Houston, Texas, for Respondent.

Before:

Chief Justice Nathan L. Hecht; Justices Paul W. Green, Phil Johnson, Don R. Willett, Eva M. Guzman, Debra H. Lehrmann, Jeffrey S. Boyd, John P. Devine and Jeffrey V. Brown.

CONTENTS

ORAL ARGUMENT OF DENYSE FINN CLANCY ON BEHALF OF THE PETITIONERS

ORAL ARGUMENT OF MACEY REASONER STOKES ON BEHALF OF THE RESPONDENT

REBUTTAL ARGUMENT OF DENYSE FINN CLANCY ON BEHALF OF THE PETITIONERS

CHIEF JUSTICE NATHAN L. HECHT: Please be seated.

Justice Lehrmann cannot attend because of illness, but expects to participate in the decisions of all three cases.

The Court is ready to hear argument in 13-0175, Abutahoun v. Dow Chemical Company.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



MARSHAL: May it please the Court.

Ms. Clancy will present argument for the Petitioners. Petitioners have reserved five minutes for rebuttal.

ORAL ARGUMENT OF DENYSE FINN CLANCY ON BEHALF OF THE PETITIONERS

ATTORNEY DENYSE FINN CLANCY: May it please the Court.

I would like to address two issues today. First, does Chapter 95 apply to a property owner's contemporaneous negligent activity?

And second, time permitting, how the causation evidence in this case meets the Court's recently enunciated causation standard in Bostic v. Georgia-Pacific.

With respect to the first issue, Chapter 95, the question is, under what circumstance is a property owner liable when an independent contractor is injured on his property. Under common law, there are two ways to -- two methods of premises liability. The first is when there's a defect on the premises. The second is when there is an activity that gives rise to harm.

In 1985, this Court clarified in Redinger v. Living that, well, a property owner is ordinarily not responsible for making sure that an independent contractor does his work safely. If the property owner exercises sufficient control over the work activities of the independent contractor then liability may lie.

Ten years later, the Texas legislature enacted Chapter 95, which codified the holding in Redinger with respect to negligent activities performed by an independent contractor, and also added two additional -- two additional provisions. The first being that rather than just have constructive knowledge of any potential harm that might arise to the contractor the legislature mandated that there' be actual knowledge of the harm. This was to correct -- to -- for lack of a better word, some absurdities in the case law that had arisen where the property owners had literally no idea what the independent contractor was doing or could never have foreseen that this harm might arise.

For example, in one case cited in the briefing, Gulf Oil, a property owner was held liable where independent contractors decided to take some ropes strewn around the property, and string it up 30 feet to hang scaffolding. Not surprisingly, a fall ensued and the property owner was held liable for leaving the rope lying around.

With respect to this case, the second -- sorry -- the second addition to Redinger is that it also codified issues of premises defect. You can see that in the language saying that Chapter 95 relates to a condition that occurs on the property. So in other words if -- if the independent contractor walks on to the property and is injured by a defect on the property whether created by -- unknown forces or also created by the negligent actions of the independent contractor, that defect -- that condition is covered under Chapter 95.

And so turning to Chapter -- excuse me -- tab 1 of the briefing notebook -- the oral argument notebook -- I have Chapter 95 set forth, and you can see from 95.003 liability for acts of independent contractors it in-

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



deed -- Chapter 95 -- is codifying Redinger's holding that a property owner can't be liable for the actions or harm arising to an independent contractor by virtue of his own actions unless he has sufficient control over the contractor's work and knowledge -- certain knowledge that harm might arise.

And this is exemplified by the Fifth Circuit's 2005 decision in Arsement which is cited in Dow's briefing in which a contractor was -- excuse me -- a welder on a barge was installing a heavy piece of equipment and he opted to use an ill-fated "Plan B" rather than the recommended "Plan A" and the heavy piece of equipment fell and injured his foot. The Fifth Circuit held that under Chapter 95 that activity -- that negligent activity of the contractor could not be ascribed to the property owner because there wasn't sufficient control exercised by the barge owner.

Where the court of appeals erred, and where the court of appeals is trying to -- attempted to expand the scope of Chapter 95 is to hold that it applies not only to the negligent activities of the contractor, it -- and not only to a premises condition or defect but also to the contemporaneous negligent activity of the independent contractor. And that's a really critical --

CHIEF JUSTICE NATHAN L. HECHT: Of the -- of the owner, you mean -- of the -- contemporaneous --

ATTORNEY DENYSE FINN CLANCY: Excuse me. I have no -- yes, thank you. Got the whole thing backwards. Yeah. No. It -- it applies to the contemporaneous negligent activity of the property owner. And so -- but that is not supported by the plain language of the statute, and it's not -- certainly not supported by placing the statute in the context in which it arose.

JUSTICE PAUL W. GREEN: Do you think that the Chapter 95 provisions are in conformity with the common law as far as that -- that contemporaneous negligence of the property owner, or does it change it?

ATTORNEY DENYSE FINN CLANCY: It is in conformity with the common law which for over a hundred years the Texas common law has uniformly held that a property owner is liable for its own contemporaneous negligent activity. And -- sorry.

JUSTICE PAUL W. GREEN: Even when you have an independent contractor involved?

ATTORNEY DENYSE FINN CLANCY: Even when you have an independent contractor, and there -- there's several reasons why that's true.

First, if you look at the statute, the applicability section, the key provision is 95.002(2) -- and again this is tab 1 -- it's a -- the chapter applies to a claim that arises from the condition -- and here we see the word indicating a premises defect -- or use -- here we see the word indicating an activity -- of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Now, the -- by the doctrine of last antecedent where the contractor or subcontractor constructs, repairs, or renovates would modify use indicating that it is the -- harm arising must be precipitated by the action of the contractor. So in all of the case law cited by Dow, it is true that the harm arose by virtue of the contractor's own actions. The contractor negligently installed -- in Arsement -- the piece of equipment causing his

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



harm. The contractor failed to keep a lookout while walking on the roof. Those were actions that were precipitated by the harm of the contractor.

If there's any doubt as to whether or not this applies to actions of the contractor, we look in -- places in context, as we must, with 95.003 which says that you can only be liable if you, the property owner, control the actions of -- or activities of the independent contractor. And thus meaning that the legislature is saying there must be a nexus between control as there was in Redinger, and the ability to ascribe.

To read this any other way, to say that, as the court of appeals did, that even though it was the Dow employees who caused harm to Mr. Henderson that in order for Dow to be liable, plaintiff had to prove that Dow had control over Mr. Henderson's activity, creates a situation which completely divorces the ability to control over the ability to ascribe duty, and it's frankly nonsensical.

So therefore -- especially when reconciling 95.002 with 95.003, it is clear that what the legislature was intending to protect the property owner from is those inactions -- harms arising where the independent contractor precipitated the harm by virtue of his own acts or a preexisting condition on the property.

And I want to be very clear about one point which Dow makes over and over in its brief. Dow says, well, look, the case law such as Vanderbeek says that a property owner can be liable for its -- excuse me -- Chapter 95 applies to protect the property owner from its own negligent activity, but let's place that in context. What Vanderbeek is saying is when a property owner such as the property owner in the hospital in Vanderbeek who placed the Glug -- or allegedly placed the Glug Drano in the drain which later caused burns to the plumber -- that when they create a preexisting condition on the property that in those instances Chapter 95 protects them from that negligence, and that's perfectly in line with the statute.

JUSTICE EVA M. GUZMAN: What about just the -- the activity somehow relating to -- to the work being done by the contractor or subcontractor as opposed to creating?

ATTORNEY DENYSE FINN CLANCY: Right. The -- the contention that because the legislature had used the words "relate to," if it relates to the contractor's work, well, the first problem is that the word "relate to" doesn't appear in the statute itself. And we know that we must, first and foremost, be guided by the plain language of the statute. And second, I believe Dow's argument is a policy argument that if -- if they are doing the same type of work -- if Mr. Henderson and the Dow employees are both insulating then why should we hold the Dow employees responsible if Mr. Henderson was also by his own activities emitting asbestos fibers into the air.

But the problem with that argument is that, well, Mr. -- the policy behind not making a work environment safe for an independent contractor, in other words, not being responsible to -- for -- to make sure that he performs his work safely. The policy behind that is you should be able to say, independent contractor, you're able to keep a lookout, you're able to protect yourself. You're -- you should come in, you should rope off the asbestos in the area, you should wet down the asbestos as you use it, and you have every ability to protect yourself.

The problem is, Mr. Henderson has no ability to protect himself from the in -- Dow insulators who are spraying asbestos into his area, his --

© 2015 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



CHIEF JUSTICE NATHAN L. HECHT: Why couldn't he just say "I'm not going to do it" without going on, anymore than an independent contractor who is a welder who wouldn't want to weld around flammable materials?

ATTORNEY DENYSE FINN CLANCY: And --

CHIEF JUSTICE NATHAN L. HECHT: You just say, "No, I can't do it."

ATTORNEY DENYSE FINN CLANCY: Exactly. And that's why the word "contemporaneous" is a really key term. This isn't an instance of where he had time to say, I don't -- I don't want to do this. This is something that happens immediately. And that's why this is a -- Dow stated that this will be a hard line for people to draw. This is not a hard line. This is a line that this Court in Del Lago, this Court in Timberwalk has drawn repeatedly.

If you look to whether an action is contemporaneous such as in Keetch v. Kroger, was the glow spray placed there 30 minutes or was she simultaneously spraying the glow spray when the shopper tripped. A simul -- an action that happens contemporaneously you, by definition, don't have time to foresee and protect yourself from, and that's the policy reason behind -- behind property owners remaining liable for their own contemporaneous negligent activity.

JUSTICE JEFFREY S. BOYD: So just like the phrase "relates to" the word "contemporaneous" doesn't show up in the statute either, does that matter at all to our analysis?

ATTORNEY DENYSE FINN CLANCY: Well, it matters to our analysis in this way, a statute when enacted, the legislature is presumed to have taken into consideration the common law and everything that is present at the time that it enacts the statute. And placing this in context, the statute was clearly codifying premises liability as it had been known and adding two additional key requirements. But nowhere did it say that it took away the ability of a claim against the property owner for its contemporaneous negligent activity. And the absence of that word is -- is critical that it didn't take away that right.

And so, Professor Dorsaneo in his amici brief -- amicus brief pointed out that -- I'll be quick -- Professor Dorsaneo in his amicus brief pointed out, look, the most the court of appeals could say is that Chapter 95, the plain meaning of it, does not preclude its applicability where claim is based on the negligent actions of the property owner. But precluding its applicability is hardly the same thing as saying as the -- the statute intentionally prescribes claims against -- proscribes claims against the property owner for the contemporaneous negligent activities of the property owner's employees.

I would -- if I have about one minute left, and if -- I would like to switch very briefly to the causation evidence. The causation evidence -- the statement was made by Dow -- and I want to be very clear about this -- that there was no way to distinguish between the asbestos emitted by Dow employees and the asbestos emitted by Mr. Henderson's -- Mr. Henderson's coworkers at Win-Way.

But that's absolutely refuted by the evidence which is if you turn to page -- sorry -- tab 5, Mr. Henderson's testimony was, what did Dow specifically -- not the Win-Way employees, not anyone else -- how often

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



were you working around Dow and what did Dow specifically -- how far away from -- they were -- were they from you when they were insulating, when they were cutting asbestos insulation, how many hours a day, and how many days per week. There was no testimony -- there is no testimony in the record whatsoever as him being exposed as a bystander to Win-Way employees. Dow --

JUSTICE PAUL W. GREEN: Well, he could have said no.

ATTORNEY DENYSE FINN CLANCY: What?

JUSTICE PAUL W. GREEN: He could have said no. He said -- all this time he had to exposure.

ATTORNEY DENYSE FINN CLANCY: Eventually, he could have said no, yes, he could have.

Assuming that he wanted to -- assuming that he controlled, which he doesn't, the Dow employees. He exercises no control over the Dow employees and that's another key point. Win-Way and -- and Mr. Henderson exercise no control over the Dow employees, period. And therefore they really can't tell -- dictate to Dow how Dow behaves on its premises.

In contrast, Mr. Henderson does control his own work, and that's why when the injury arises from a negligent activity of Mr. Henderson it makes perfect sense that the statute would apply to a protected property owner in that instance.

CHIEF JUSTICE NATHAN L. HECHT: Any other questions?

Thank you, Ms. Clancy.

We'll hear from the Respondent.

MARSHAL: May it please the Court

Ms. Reasoner Stokes will present argument for the Respondent.

ORAL ARGUMENT OF MACEY REASONER STOKES ON BEHALF OF THE RESPONDENT

ATTORNEY MACEY REASONER STOKES: May it please the Court.

Neither Chapter 95's plain language nor its legislative history supports the kind of wholesale exception for claims based on the negligent activity of a premises owner that petitioners ask this Court to recognize here today.

Section 95.002 which petitioners ignore which -- but which govern -- governs the applicability of the act says that it applies to a claim against a property owner which is broadly defined as a claim for damages based on -- excuse me -- based on negligence.

© 2015 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



CHIEF JUSTICE NATHAN L. HECHT: Just as an aside, it says a claim against the contractor or subcontractor. Can you -- is there any reason why those two words were in there?

ATTORNEY MACEY REASONER STOKES: Are you talking about -- because the fact that they're also not in 95.003?

CHIEF JUSTICE NATHAN L. HECHT: Right.

ATTORNEY MACEY REASONER STOKES: Your -- Your Honor, I mean, this isn't presented by our case but it does -- it is unusual that they put it there and not in 95.003 because 95.003 does change the common law, I would submit, and that it only applies to a property owner and not a general contractor. But they may have included it in 95.002 for purposes of the types of evidence that are relevant in 95.004, but I -- I don't -- I don't know the -- the answer as to why it's there and not in 95.003.

But no one disputes in this case that a claim based on a owner's contemporaneous negligent activity is a claim -- a negligence claim. Just as would be a premises defect claim or a claim against an owner for an independent contractor's negligent activity. So we submit that this -- this claim falls within the plain language of the statute.

Now, petitioners in the Fourteenth Court of Appeals in Elmgren said that can't be right because the Supreme Court has always carefully distinguished between negligent activity claims on the one hand, and premises defect claims on the other. That's true. No one has ever disputed that, but it doesn't change the fact that they are both types of negligence claims, and it doesn't answer the crucial question of statutory construction in this case which is whether the statute is intended to cover both negligent and premises defect claims because they are both claims for damages based on negligence.

The Elmgren case upon which the petitioners heavily rely recites but never actually examines the language of the statute when it tries to answer that question. Instead, it acts as if the statute referred to premises defect instead of negligence. And I think that the opinion is written so broadly as so suggest that the statute wouldn't even apply to the negligent activity of an independent contractor which is inconsistent with the petitioner's petition here. And with the summary judgment in our case which apply Chapter 95 to the negligent activity of the Win-Way contractors and Mr. Henderson, and which the petitioners have not -- excuse me -- not appealed.

CHIEF JUSTICE NATHAN L. HECHT: What if the owner -- the owner's employees just drops something on the independent contractor? Would the owner have liability in that situation?

ATTORNEY MACEY REASONER STOKES: Well, if the -- if the claim arose out of the same improvement that the contractor was hired to work on then I think it would.

I -- I would say that in our case, there's no longer any dispute that the petitioner's claim arises from a -- the condition or use of the improvement which Win-Way was hired to work on. They challenged that below but they have not challenged in this Court the court of appeals' conclusion that the Dow employees and the Win-Way workers were working on the same pipe system, doing the same work, and so that is the same

© 2015 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



improvement.

And so to Justice Boyd's question, and -- and Justice Guzman, this case doesn't require this Court to resolve a conflict between "relates to" and "arising from." It's just not presented by the petitioner's brief.

CHIEF JUSTICE NATHAN L. HECHT: But if the -- I'm -- I'm just trying to think of examples that are hard to square with the statute, it seems to me, that if the owner's safety manager were driving around the project to check on things and happened to run over an independent contractor, I take it from your view of the statute that wouldn't be covered? That the statute would apply to that and limit the owner's liability.

ATTORNEY MACEY REASONER STOKES: No, Your Honor. We -- we don't believe that the statute would apply if the -- the improvement that the contractor was hired to work on is not the one that causes injury.

So if the, you know, to take the example in legislative history where there's a plant explosion that has nothing to do with what the contractor has been hired to work on, we -- we agree that that would not be covered. Or if somebody is run over not working on their improvement but just happens to be on the plant and is run over, we wouldn't argue that it applies to that but of course that's not our facts.

CHIEF JUSTICE NATHAN L. HECHT: So -- so you think if the -- if the independent contractor here had been injured by the owner's employee doing electrical work where he just dropped -- I'm just thinking he drops a heavy wrench or something and hits the fellow and injures him, the statute would apply to that or not? If not because it's not the same improvement?

ATTORNEY MACEY REASONER STOKES: Well, I think it's difficult to opine on particular factual scenarios without having a full record. You know, I think it -- it depends on -- if the -- if -- if the electrical contractor is working on a separate improvement, then it's possible it wouldn't apply.

But again this Court is not going to be required to -- to examine the meaning or limits of the term "improvement" in the statute because it hasn't been raised in the brief on the merits.

I would like to address, one point the petitioner has made, they claim that -- that no other case has applied Chapter 95 to negligent activity claims. I submit that is -- the premises owner -- I submit that is wrong. The Arsement case that the Fifth Circuit wrote was not a case where they claimed that the owner was liable for the independent contractor's negligent activity.

It was -- the claim was that the owner -- the owner -- that Spinnaker was itself negligent in designing and controlling the execution of a plan for the work in that case. And -- and the Arsement case expressly held that Chapter 95 applies to both premises defect and negligent activity claims including the negligent activity of the premises owner.

And Vanderbeek, Francis, Guidry, all of those cases regardless of their facts, they all recognized that Chapter 95 is not limited to acts of passive negligence by the property owner.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



I would -- I would submit that the legislature had good reason to make Chapter 95 broadly applicable to both premises defect and negligent activity claims against the premises owner. When it enacted Chapter 95 it did so against a background of case law that encountered real difficulty and particular cases of drawing the temporal line between negligent activity and premises defect.

As this Court said in Keetch v. Kroger Company issued just three years before Chapter 95 was enacted, at some point, almost every artificial condition can be said to have been created by activity. So I think it was reasonable for the legislature to avoid the types of thorny threshold applicability questions in every case that the plaintiff's interpretation of the statute would give.

And it also avoided creating an exception to the statute's purview that most plaintiffs could try to squeeze into through artful pleading. I think our case and Elmgren are perfect examples of that. In both cases, the plaintiffs alleged that a single set of facts gave rise to both premises defect and negligent activity claims.

In our case, the -- the plaintiffs pleaded that Dow negligently removed and applied asbestos insulation but they also argued that the asbestos- containing insulation was itself a dangerous condition that violated our alleged duty to provide a safe place to work.

And the same thing in Elmgren they alleged that Ineos negligently issued a safe work permit declaring a line free of gas when it wasn't because of a leak, but they also alleged that the leak itself was a dangerous condition that violated Ineos' duty to provide a safe workplace. So I think it was reasonable for the legislature to -- to make the statute applicable to both types of claims.

Now petitioners make an argument that -- that Elmgren doesn't support and that -- that they assert here today that the statute does apply to negligent activity but only to the negligent activity of the independent contractor. And they base that solely on the -- where the contractor or subcontractor constructs, repairs, renovates or modifies the improvement.

But the only reasonable construction of that clause is that it modifies improvement. It describes the improvement not that it modifies condition or use. In other words, that the improvement that causes the injury must be the one that the contractor was hired to work on. And I think that requirement reflects a public policy that this Court has recognized in the Redinger line of cases that where a contractor controls his employees and is hired for his expertise with regard to a particular improvement, he is in the best condition to anticipate risks associated with working with that improvement and to protect his employee against those risks.

CHIEF JUSTICE NATHAN L. HECHT: But it seems to me that that argument suggests that the statute cannot apply here because the Dow people were working over here and the independent contractor was working where he was working.

ATTORNEY MACEY REASONER STOKES: No, your Honor, it was the identical risk because --

CHIEF JUSTICE NATHAN L. HECHT: Risk may have been the same but were the improvements and the where, the same, these are very difficult words. And improvement, is that the building or is that this piece of pipe that he's working on; where, is that right here or is that being on the premises.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



ATTORNEY MACEY REASONER STOKES: Well, I would submit that the where the contractor -- construction repairs, the improvement is a stand- alone clause that defines what the improvement is earlier in the sentence. I mean --

CHIEF JUSTICE NATHAN L. HECHT: But it's true, isn't it, in this case that the independent contractor was working in one place and the Dow people were working a little ways away.

ATTORNEY MACEY REASONER STOKES: They were working only 5 feet away, and it was the same improvement, it was the same pipe system which is -- which as I mentioned is no longer in dispute in this case.

And -- and the -- the dangers that the independent contractor was supposed to guard against were the exact same dangers it was guarding -- supposed to guard against from its own -- I mean the -- they were both doing the exact same thing, to the exact same asbestos-covered pipe, and -- and the -- the protections that -- that they could have given, they could have required their own employees including Mr. Henderson to wear a respirator, to wear a mask, to use wetting methods.

I mean, those are all things that Win-Way could have done regardless of whether the Dow employees were there. It was guarding against the same danger.

CHIEF JUSTICE NATHAN L. HECHT: So if the Dow employees are working on a separate piece of pipe, and it was 15 feet away, then the statute wouldn't apply?

ATTORNEY MACEY REASONER STOKES: Well, your Honor, you know, again, I don't think this case will require this Court to -- to address that issue. I mean, if you had a factual scenario where they were totally distinct pipe systems, it's possible you could have facts showing a separate improvement but again we don't have that issue in -- in our case.

And I -- I think another problem with the plaintiff's interpretation of the statute is they concede today that -- and in their briefs that Chapter 95 applies to premises defects created by the owner that pre-exist the independent contractors' work. But because the statute says condition or use, it's simply not possible to carve out condition as meaning condition created by the owner or the contractor but yet used only by the contractor.

And I think it begs the question of why the legislature would want to distinguish between those two types of negligent conduct by an owner. One is not, you know, as a general matter, more reprehensible or dangerous than the other. They're both negligence.

I think the -- the -- Ms. Clancy also claims that there is a conflict between the statutes but -- between 95.002 and 95.003 but I would submit that there is only a contract generated because they assumed that 95.002 refers to control over the work, I mean -- excuse me -- arises from the work, and of course, it doesn't. It says arises from the condition or use of the improvement whereas 95.003 says control over the work.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



You know, I think the Court can and should resolve this -- this case solely based on the plain language of the statute but to the extent they rely on the legislative history I don't think that changes anything either. You know, first of all, as this Court has repeatedly recognized, legislative history can't be used to change the plain language of the statute, and particularly not here where the legislative history primarily consists of statements by individual legislators.

But regardless, there's nothing in the legislative history that carves out an exception for the negligent activity of the premises owner or even negligent undertaking as the Elmgren court held. They're just Representative Junell's hypotheticals neither of which remotely relates to -- to our facts.

The -- as I mentioned before the plant explosion that has nothing to do with the improvement that the contractor was hired to work on. And then they also -- the situation of the owner telling the contractor that the line is free of gas when it wasn't, now that's also completely disconnected from our facts.

I think it might be -- it's closer to Elmgren's facts and it may be what led that court into error and misconstruing the plain language of the statute. But I think that factual scenario is still covered by the statute as the Dyall dissent expressly recognized.

I think to the extent those facts are relevant, they're relevant to the control prong of Chapter 95, not to showing that the statute doesn't apply. And I think one of this Court's Redinger line of cases demonstrates that. The Dow Chemical Company v. Bright case cited in the briefs held that a safe work permit system which was the issue in Elmgren that that is not evidence of control unless it increases the probability or severity of the injury.

And Ellwood and other cases under Chapter 95 have applied that same approach to determining the control prong of Chapter 95. And I think the -- the legislative history of Chapter 95 is a good example of why this Court as a -- as a general matter doesn't rely -- doesn't place undue significance on legislative history. There are several statements in the legislative history that don't comport with the plain language.

Just to take one example, Representative Combs who was a co-author of this bill gave an example of the husband and wife who hired a contractor to build them a house in another city. But of course, Chapter 95 doesn't apply to residential property owners because 95.001(3) defines property owner as someone who owns property primarily for business or commercial use.

I will say that in this case the petitioners have not disputed that if Chapter 95 applies, Dow is entitled to rendition of judgment. Their brief does not challenge the court of appeals' finding that there was no evidence of actual control nor does it challenge the court of appeals' conclusion that because plaintiffs refuse to submit the two elements of Chapter 95 over Dow's objection, Dow is entitled to rendition.

Briefly on the -- the Bostic issue raised -- raised by the petitioners, I think the -- and this is an alternate ground for affirmance of the rendition of judgment for Dow. The evidence was legally sufficient -- insufficient of specific causation in two different ways. One there was not evidence of an approximate dose that was attributable solely to Mr. Henderson's bystander exposure to Dow employees as opposed to Win-Way employees.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE

For a fully searchable and synchronized transcript and oral argument video, go to the TX-ORALARG database on Westlaw.com

William Longo who was the same expert who testified in Bostic said that he based all his calculations on Mr. Henderson's bystander exposure, but he made no effort to delineate between bystander exposure to the Dow employees and bystander exposure to the Win-Way contractors which was required both by Bostic and by the summary judgment that the MDL issued in this case.

The second way in which the evidence is not sufficient to show specific causation is that there were no epidemiological studies demonstrating a statistically significant doubling of the risk of contracting mesothelioma at exposures comparable to Mr. Henderson's. No studies were introduced in evidence and the sole witness who made any reference to a doubling of the risk was Richard Lemen, another expert who testified in Bostic, and all it consists of is a single statement that there exists epidemiological studies showing a doubling of the risks for bystanders to insulators' work.

There was absolutely no discussion beyond that of the studies, what they showed, or whether the exposures or circumstances were similar to Mr. Henderson's.

JUSTICE PAUL W. GREEN: What was -- what was the length of the exposure?

ATTORNEY MACEY REASONER STOKES: He testified that two to three -- he worked at Dow for ten months as opposed to 27 years at Alcoa. And he testified that two to three days a week he worked within 5 to 10 feet of the Dow employees for I believe it was four to six hours.

Later, he also testified that two days a week, he worked within 10 feet of them for six to eight hours. That was the testimony on that.

JUSTICE PHIL JOHNSON: Opposing counsel's bench book -- book here demonstrates, they quote Dr. Kradin as saying that the exposures were greatly in excess of what one needs to see in order to produce an increased risk or an incidence of developing mesothelioma. And your position is that doesn't reach the doubling level.

ATTORNEY MACEY REASONER STOKES: I don't think it does. It's a conclusory statement. He referred to three studies by name but he made no even statement that they showed a doubling of the risks much less in at-exposures or in circumstances similar to Mr. -- Mr. Henderson's. And I would submit that, you know, you can't -- the law requires the expert to either put in -- to put in the studies and if not that, to at a minimum, discuss what's in those studies and show how they prove they satisfy the standards of Bostic and they did neither in this case.

If the Court doesn't have any more questions.

CHIEF JUSTICE NATHAN L. HECHT: Any other questions?

Thank you, Ms. Stokes.

ATTORNEY MACEY REASONER STOKES: Thank you.

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



CHIEF JUSTICE NATHAN L. HECHT: Ms. Clancy, I think you have five minutes.


REBUTTAL ARGUMENT OF DENYSE FINN CLANCY ON BEHALF OF THE PETITIONERS


JUSTICE PHIL JOHNSON: Ms. Clancy, I don't want to interrupt you, your train of thought here before you get started, but I presume that the evidence you put in your -- in your handout here is the best evidence you have about the causation, doubling of the risks.


ATTORNEY DENYSE FINN CLANCY: It is -- yes, it is the best evidence we have. And I would like to point out on tab 5 that Dr. Kradin says that --


JUSTICE PHIL JOHNSON: That's where I'm reading from actually, the last line of what you have down there.


ATTORNEY DENYSE FINN CLANCY: Tab 5. And if you look at the answer, testimony of Richard Kradin, and I should have put the question in. But he said what do the epidemiological studies show. And this is in 7RR23.


But he said the types of exposure and the level of exposure as explained by Dr. Longo would be well in the range of those levels of mesothelioma that are required to produce a malignant mesothelioma. Thus, squaring with Bostic's requirement that you need to show that in and of itself the Dow exposure was sufficient to cause the mesothelioma.


I also want to point out that Dow made -- never made any objections to Dr. Kradin at any point, his qualifications, the relevance and reliability studies, nothing.


And so Dr. Kradin did more than what's satisfactory under Coastal which was saying, here is my opinion. This was sufficient to produce mesothelioma. Here are the epidemiological studies I'm relying on and here's the basis of my opinion.


I've attached a chart at tab, tab 7, that shows the epidemiological studies and Dow doesn't dispute that these epidemiological studies do indeed show that if the levels of dose calculated by Dr. Longo from Dow's bystander -- exposure to Dow that that more than doubled the risks. Dow is not disputing that.


They're just saying procedural got you. He didn't enter the studies into evidence. Well, under Texas Rules of Evidence, we couldn't enter the studies into evidence because a jury is not allowed to take studies back -- epidemiological studies back into evidence. The expert is allowed to say he referenced the studies but they're not allowed to be admitted.


This procedural gotcha shouldn't be allowed certainly without objection by Dow. I want to go back to Dow's primary argument which is look, as long as it's the same improvement that they're working on a property owner cannot be held liable for its contemporaneous negligent activity and that creates -- first of all, most of the situations in which a contractor is going to be injured because of a property owner's con-

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE



temporaneous negligent activity would arise when they're working in close context with each other. By definition it would be the same improvement.

And second, it creates the same inequities that Justice Hecht was referring to if somebody drops something on someone, how do you protect yourself against that. And the Elmgren court out of the Fourteenth was quite clear about this. They said look, this was a failure, a contemporaneous failure to take the gas out of the de-coker system. We asked him if it was clear, the property owner told him it was clear. It wasn't clear. There was a massive explosion.

That was a contemporaneous act on the exact same improvement. Dow would hold that the contemporaneous negligent act there on the same improvement the property owner has no liability for that and that leads to grossly inequitable policy distinction -- policy problems down the road, as well as, encouraging property owners to have free license with their independent contractors as long as it can be perceived that they're operating on the same improvement. That simply doesn't make sense and it's certainly not supported by the statute.

CHIEF JUSTICE NATHAN L. HECHT: And if that's a hard example this one -- the present case seems easier because they did know that there was a common danger that they should try to avoid.

ATTORNEY DENYSE FINN CLANCY: Actually, no. There is no evidence in the record that Mr. Henderson had any knowledge in 1968 that asbestos caused him harm. None. And in fact the jury found that he had no responsibility under a Chapter 33 allegation for the harm that arose to him. There is, however, the record is replete with evidence that --

CHIEF JUSTICE NATHAN L. HECHT: But if he had, you would still hold the owner liable?

ATTORNEY DENYSE FINN CLANCY: If I had -- if he had, yes, because under Chapter 33 we are required to allocate to each person his responsibility for the fault.

CHIEF JUSTICE NATHAN L. HECHT: I'm just saying in a hypothetical case where the independent contractor is injured by the negligent activity of the owner's employee working in the same area, you would hold the owner liable even if the employee knew -- the independent contractor knew he should avoid the risk.

ATTORNEY DENYSE FINN CLANCY: Correct. So for example, even if I know that that you were working on the same table, building the same table, my property owner shouldn't take a hammer and hit my hand. I know that. But I can't protect against it. I can't control him. And that shouldn't be the reason to absolve the property owner under Chapter 95.

I did want to point out under tab 10 that there's a memorandum from Dow in 1968 that arose at the same time that Mr. Henderson was there where Dow says not only -- he says any asbestos workers death due to mesothelioma will be considered due to asbestos exposure until proven otherwise. So in contrast to Mr. Henderson, Dow had full knowledge at the time that its asbestos insulation -- the procedures were harmful.

JUSTICE JEFF BROWN: If that's true then why isn't there a liability against Dow under 95.003(2) which

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE

shows the property owner -- it says if the property owner had knowledge of the danger or condition, then Chapter 95 does not apply?

ATTORNEY DENYSE FINN CLANCY: Well, actually, the applicability section is 95.002. Once you find that they're liable -- once you find that it applies under 95.002 you have to prove two things, one that Dow controls Mr. Henderson's work and that Dow had knowledge. Dow never contested that they had knowledge. They contested they controlled Mr. Henderson's work which wasn't the nexus of the harm.

JUSTICE JEFF BROWN: Well, under the plain language of 95.002 it seems to me that this is a case by a contractor against a property owner that arises from the condition, or use of improvement that the contractor was working on, and I can't see how 95.002 does not -- does not apply. Is it -- it's the term "use"?

ATTORNEY DENYSE FINN CLANCY: Yes. It's "who's use." Dows says that's undefined but there are two arguments that - - that we make. One is it's defined by the modifying phrase "where the contractor constructs repairs." And the second is, you can't harmonize -- you have to harmonize 95.003 with .002 . And it's undisputed that 95.003 only applies to control over the acts of the independent contractor. And it results in an absolutely nonsensical application of the law is, as in this case, the courts require you to prove control over the force that didn't even cause the harm in the first place.

In other words, they're requiring us to show the control over -- Dow had control over Mr. Henderson's work when the issue is the Dow employees were causing the harm. And therefore, the only sensical -- excuse me -- the only way to harmonize 95.002 and 95.003 is to say that where the contractor constructs, repairs, or modifies the improvement means that it's precipitated by the contractor's work.

CHIEF JUSTICE NATHAN L. HECHT: Any other questions?

Thank you, Ms. Clancy.

That concludes the arguments in the first case. The Court will take a brief recess.

MARSHAL: All rise.

END OF DOCUMENT

© 2015 Thomson Reuters/West.  No Claim to Orig. US Gov. Works.

NOT FOR COMMERCIAL RE-USE